UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELEANOR LAFATA,

    Plaintiff,

v.

CASE NO. 05-CV-72882-DT
MAGISTRATE JUDGE PAUL J. KOMIVES

CHURCH OF CHRIST HOME FOR THE
AGED, d/b/a Church of Christ Care Center,

    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (docket #17)

I. **OPINION**

A. *Background*

On July 22, 2005, plaintiff Eleanor Lafata filed a complaint against defendant Church of Christ Home for the Aged based upon the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, and the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654. Plaintiff alleges that defendant Church of Christ Home for the Aged, her former employer, failed to reinstate her to her former position following her medical leave, and failed to accommodate her disability.

Plaintiff was employed by defendant from February 16, 2000 through May 16, 2003. *See* Compl. ¶ 4.[1] She was originally hired as a staff nurse. *See id.* at ¶ 5. On November 25, 2000, plaintiff "injured [her] shoulder while working at Church of Christ Home for the Aged." Pl.'s 1st

---

[1] According to defendant: "Plaintiff was employed by Church of Christ Care Center from February 16, 2000 until December 29, 2001 when she transferred to Church of Christ Assisted Living, Inc. and remained until October 20, 2003[.]" Ans. ¶ 4.

Summ. J. Br., Ex. 1, ¶ 1. The activity status report of the same date from Concentra Medical Centers states that plaintiff may return to work but must wear a splint and has limited use of her right arm. *See id.*, Ex. 14. The February 2, 2001 activity status report from Concentra Medical Centers states that plaintiff could return to work but could not perform repetitive lifting over ten pounds and could not push and/or pull over five pounds of force. Furthermore, she could not perform overhead work. *See id.*, Ex. 15.

On August 24, 2001, plaintiff's doctor (Jack B. Ryan, M.D.) wrote a restriction note stating "Permanent restriction of no pushing or pulling" and diagnosed plaintiff with "Adhesive capsulitis right shoulder." *Id.*, Ex. 1, ¶ 4; Ex. 16. At some point, Dr. Ryan informed plaintiff that "the only other treatment [she] could receive for [her] shoulder [was] an [arthroscopic] surgery called 'break loose surgery'." *Id.*, Ex. 1, ¶ 25.

In April 2002, plaintiff was promoted to Health Services Coordinator at the assisted living facility. Compl. ¶ 5; Pl.'s 1st Summ. J. Br., Ex. 1, ¶ 6. Plaintiff signed the position description, as well as an addendum to the job description, on April 5, 2002. The addendum excluded the position's physical demands of "[l]ifting, pushing or pulling 50 to 75 lbs, using proper body mechanics or available equipment[,]" and "[l]ifting arms above head to reach and clean shelves, ledges and windows[.]" *Id.*, Ex. 17.

Plaintiff fractured her foot on February 21, 2003. Def.'s 1st Summ. J. Br., Ex. 7; Pl.'s 1st Summ. J. Br. Ex. 10. A February 21, 2003, disability certificate from the office of podiatrists Hosey, Kowalchick, Loder and Miller notes that plaintiff "is to be off work for two weeks or until [further] notice." Pl.'s 1st Summ. J. Br., Ex. 3. On March 31, 2003, plaintiff started a medical leave due to a fractured foot–an injury which occurred while she was not working–and stress-related exhaustion.

2

Compl. ¶ 7.[2] Internist Dr. Neisch's notes diagnose anxiety/depression, claim plaintiff's restrictions began on March 31, 2003 and note that he was unable to assess a restriction ending date at that time. *See* Pl.'s 1st Summ. J. Br., Ex. 6. In April 2003, plaintiff filed a discrimination complaint with the Michigan Occupational Safety and Health Administration (MIOSHA). *See* Pl.'s 1st Summ. J. Br., Ex. 11.

By an April 28, 2003 letter, plaintiff forwarded to Debra Barber, defendant's Human Resources Director, a disability claim form. *See* Pl.'s 1st Summ. J. Br., Ex. 7. On May 2, 2003, podiatrist Kowalchick noted that plaintiff's restrictions began on February 21, 2003 and ended on June 2, 2003. *See* Pl.'s 1st Summ. J. Br., Ex. 6. By a May 16, 2003, letter from Barber, plaintiff was notified that a replacement had been hired. *See* Compl. ¶ 8.[3] On June 15, 2003, plaintiff filed a complaint with the U. S. Department of Labor, Employment Standards Administration, Wage and Hour Division. *See* Pl.'s 1st Summ. J. Br., Ex. 7. In a June 16, 2003 letter, District Director James R. Smith informed plaintiff that her matter had been assigned to Investigator Shelley Scarfone. *See* Def.'s 1st Summ. J. Br., Ex. 6; Pl.'s 1st Summ. J. Br., Ex. 9.

On July 23, 2003, an investigator met with Czekiel and Barber to review personnel and payroll

---

[2]A March 31, 2003 disability certificate from the office of Podiatrist Thomas C. Hosey notes that plaintiff "cannot put any pressure on [her fractured foot] and cannot return to work until further notice." Def.'s 1st Summ. J. Br., Ex.4; Pl.'s 1st Summ. J. Br., Ex. 4. Also, a March 31, 2003 note from Eastside Internal Medicine states that plaintiff "is suffering symptoms of severe stress + exhaustion + should be allowed time off from work until further notice[.]" Def.'s 1st Summ. J. Br., Ex.4; Pl.'s 1st Summ. J. Br., Ex. 5.

[3]A May 16, 2003 letter from Debra Barber and Stephen M. Czekiel (Administrator) notes: "Due to the fact that your leave is for an undeterminable amount of time, we have hired a replacement Health Services Coordinator." The letter also states that, "[i]f, however, upon release from your doctor(s), you would like to work here again, we will be happy to consider you for a position if and when one becomes available within the mandated amount of time." Def.'s 1st Summ. J. Br., Ex. 5; Pl.'s 1st Summ. J. Br., Ex. 8.

information. The investigator's FMLA narrative states: "The employee was not properly notified. The FMLA information outlined in the employee handbook was insufficient and the complainant received no specific written notice. The employer has agreed to distribute the FMLA Fact Sheet and to use the WH-381 in the future." On July 25, 2003, defendant provided plaintiff a form WH-381 response, "designating all future time off for this condition as leave under the FMLA." *See* Def.'s 1st Summ. J. Br., Ex. 7; Pl.'s 1st Summ. J. Br., Ex. 10. On July 28, 2003, defendant classified plaintiff's medical leave as Family Medical Leave. *See* Compl. ¶ 9; Pl.'s 1st Summ. J. Br., Ex. 2.[4] A July 31, 2003 WHISARD (Wage Hour Investigator Support and Reporting Database) Compliance Action Report notes that plaintiff's claim that she was terminated for taking leave under FMLA was not substantiated and the complaint was not valid (as plaintiff had been off of work for more than twelve weeks). *See* Def.'s 1st Summ. J. Br., Ex. 7. An August 5, 2003, Department of Labor FMLA Certification of Health Care from Hosey Foot and Ankle Care notes a surgery date of September 25, 2003 and a tentative return to work date of October 20, 2003. Pl.'s 1st Summ. J. Br., Ex. 2. In an August 7, 2003 letter, Barber informed plaintiff that her physician's certification form was not correctly completed, sent plaintiff another form, and told plaintiff it needed to be returned by August 22, 2003. Pl.'s 1st Summ. J. Br., Ex. 11.

Barber and plaintiff spoke on September 17, 2003. An October 16, 2003 disability certificate from the offices of podiatrists Hosey, Kowalchick, Loder and Miller notes that plaintiff "is being seen and treated in our office. She may return to previous job duties, with no restrictions." Def.'s 1st Summ. J. Br., Ex. 8; Pl.'s 1st Summ. J. Br., Ex. 12. On October 17, 2003, plaintiff informed defendant that plaintiff's doctor had released her with no restrictions related to her foot fracture. *See*

---

[4] A U. S. Department of Labor FMLA Employer Response to Employee form dated July 28, 2003 is attached to plaintiff's response. Rsp. Ex. 2.

Compl. ¶ 10.

Defendant did not reinstate plaintiff to her position as Health Services Coordinator. *See* Compl. ¶ 12.[5] Rather, defendant offered plaintiff a position as "restorative nurse" in the nursing home - a position having a job description[6] which included duties "outside the scope of her restrictions". These duties included: lifting, pushing or pulling 50-75lbs., using proper body mechanics or available equipment; bending or kneeling to perform cleaning tasks; lifting arms above head to reach and clean shelves, ledges and windows; must be able to lift, carry, stand, squat, crawl, reach, kneel, push, pull, and twist using good body mechanics for sustained periods of time; must be able to walk approximately four times daily. *See* Compl. ¶¶ 13-14.[7]

On October 20, 2003, plaintiff's FMLA leave ended; however, she did not report to work on that date. By a letter dated October 21, 2003, plaintiff informed defendant that "she would like to discuss the possibility of filling one of the open positions [registered nurses and licensed practical

---

[5]According to defendant, "[p]laintiff's previous position was a key position that had been filled and was not available; however, Defendant offered Plaintiff a comparable position with the same salary and benefits." Ans. ¶ 12. Plaintiff claims that defendant "did not designate [her] a 'key' employee, as evidenced by [plaintiff's] FMLA leave paperwork, filled out by Defendant." Pl.'s Resp. in Opp'n to Def.'s 1st Mot. for Summ. J. (docket #9), ¶ 8. In her August 31, 2006 supplemental response, plaintiff claims that Debra Barber, defendant's Director of Human Resources, confirmed in her deposition that "Plaintiff was not a key employee[.]" Pl.'s Supp. Resp., (docket #12), at 2. In her November 29, 2005 deposition, Barber stated that plaintiff did not fit the definition of "key employee" as set forth in § 825.217 of the FMLA regulations. *See id*, Ex. 2, at 45-46. In an October 8, 2004 employment application to Molina Healthcare, plaintiff described her position with defendant as a "key" position. *See* Def.'s 1st Summ. J. Br., Ex. 3.

[6]"Restorative Licensed Nurse Job Description" is attached as an exhibit to plaintiff's response. *See* Pl.'s 1st Summ. J. Br., Ex. 13.

[7]Defendant "[a]dmitted that Plaintiff alleged that the job description for 'restorative nurse' described some work that was outside her alleged work restrictions but denied as untrue that she made such allegations until after her failure to return to work when the twelve weeks of FMLA leave terminated." Ans. ¶ 14.

5

nurses] in the assisted living building[.]" Compl. ¶¶ 15, 16; *see also*, Def.'s 1st Summ. J. Br., Ex. 9; Pl.'s 1st Summ. J. Br., Ex. 18. On the same date, Dana Girty signed a summary of plaintiff's MIOSHA discrimination complaint. *See* Def.'s 1st Summ. J. Br., Ex. 11. On October 23, 2003, Barber informed plaintiff that "because she had failed to report to work on October 20, 2003, at the end of her Family Medical Leave, that this was considered a refusal to return to work and a voluntary quit." Compl. ¶ 17; *see also*, Def.'s 1st Summ. J. Br., Ex. 10; Pl.'s 1st Summ. J. Br., Ex. 19.

After exhausting civil rights complaints with the Michigan Department of Civil Rights and the Equal Employment Opportunity Commission, plaintiff commenced this action alleging that defendants violated her rights under the ADA and FMLA. On November 8, 2005, defendant filed a motion for summary judgment on both claims. After hearing oral argument, the Court granted in part and denied in part the motion. With respect to the FMLA claim, the Court concluded that defendant was entitled to summary judgment because there was no genuine issue of material fact that plaintiff was unable to return to work at the expiration of her FMLA leave, and thus defendant was entitled to judgment as a matter of law. With respect to the ADA claim, however, the Court denied the motion, concluding that genuine issues of material fact remained with respect to whether plaintiff was "disabled" within the meaning of the ADA. However, based on the arguments of counsel at the hearing, the Court also granted defendant an opportunity to file an additional motion for summary judgment on the issue of whether the Court's finding that plaintiff was not entitled to reinstatement under FMLA also precluded plaintiff's ADA claim.

Currently before the Court is this second motion filed by defendant on October 18, 2006. Defendant argues that, because plaintiff was terminated for failing to return to work at the conclusion of her leave, she was no longer an "employee" covered by the ADA. And, because she was no longer an employee, defendant was not required to offer a reasonable accommodation by altering the duties

6

of the restorative care nursing position. Further, defendant argues that even if plaintiff's October 21, 2003, letter were considered a job application, plaintiff cannot establish a *prima facie* case of discrimination in defendant's denial of that application. Plaintiff filed a response to this motion on December 7, 2006. Plaintiff argues that, under the ADA, defendant was required to provide her a temporary leave, and that her termination was the result of disability discrimination in violation of the ADA and defendant's own policies. Defendant filed a reply on December 14, 2006. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court determines that oral argument on the motion is not necessary. For the reasons that follow, defendant's motion will be granted.[8]

B. *Summary Judgment Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

---

[8]The undersigned has jurisdiction to determine this matter based on the District Judge's order of reference and the parties' consent to the exercise of jurisdiction by the Magistrate Judge. *See* 28 U.S.C. § 636(c).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C. *The ADA Generally*

The ADA prohibits employers from discriminating against a "qualified individual with a disability" on the basis of that person's disability. Under the ADA:

The term "disability" means, with respect to an individual–
    (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
    (B) a record of such an impairment; or
    (C) being regarded as having such an impairment

42 U.S.C. § 12102(2). "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Further, "consideration shall be given to the employer's judgment as to what functions of the job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id*. With regard to discrimination, the statute provides: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A).

A plaintiff asserting an ADA claim may prove her case through either direct or circumstantial evidence. If the plaintiff has direct evidence of discrimination:

> 1) The plaintiff bears the burden of establishing that he or she is 'disabled.'
> 2) The plaintiff bears the burden of establishing that he or she is 'otherwise qualified' for the position despite his or her disability: a) without accommodation from the employer; b) with an alleged 'essential' job requirement eliminated; or c) with a proposed reasonable accommodation.
> 3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will

impose an undue hardship upon the employer.

*Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Court established a burden shifting framework for plaintiffs who seek to establish a discrimination claim under Title VII through circumstantial evidence. Section 107(a) of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117 incorporates by reference § 706 of Title VII of the Civil Rights Act of 1964, and hence an ADA claim is governed by the *McDonnell Douglas* burden shifting framework:

> In Title VII actions, "a plaintiff may establish discrimination either by introducing direct evidence or by proving inferential and circumstantial evidence which would support an inference of discrimination." *Kline v. Tenn. Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). When using circumstantial evidence to create an inference of discrimination, the complainant must carry the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination by his or her employer. In evaluating a claim of employment discrimination, we employ the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 39 L.Ed.2d 668 (1973). *See also Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 525-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff who successfully establishes a prima facie case receives the benefit of a presumption that the employer unlawfully discriminated against him. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. The burden then "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* at 253, 101 S.Ct. 1089 (quoting *McDonnell*, 411 U.S. at 802, 93 S.Ct. 1817). Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant was not its true reasons, but were a pretext for discrimination." *Id.* Throughout this shifting burdens framework applicable when circumstantial evidence is involved, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*; *see also Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

*DiCarlo v. Potter*, 358 F.3d 408, 414-415 (6th Cir. 2004).

In order to establish a *prima facie* case of disability discrimination under the ADA, plaintiff must show that "(1) [s]he is a member of a protected class; (2) [s]he suffered an adverse employment action; (3) [s]he was qualified for the position in question; and (4) [s]he was treated differently from

10

similarly situated individuals outside of [her] protected class." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004); *see also*, *DiCarlo*, 358 F.3d at 415.

D.   *Analysis*

As noted above, discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability *who is an applicant or employee*[.]" 42 U.S.C. § 12112(b)(5)(A). Thus, the preliminary question is whether plaintiff was an applicant or employee at the time that defendant allegedly failed to provide a reasonable accommodation to the restorative care nursing position. Plaintiff's failure to return to work at the conclusion of her FMLA leave constituted a voluntary resignation, and the Court has already determined that defendant's termination of plaintiff's employment was consistent with FMLA. Plaintiff's termination occurred on October 20, 2003, but she did not request consideration for one of the allegedly open positions at defendant's Assisted Living facility until her letter of October 21, 2003. Thus, at the time she made her requested accommodation, she was no longer an employee, and defendant had no duty to accommodate her disability at that time. *See Johnson v. Ottertail County, Minn.*, No. 00-3098, 2001 WL 664217, at *1 (8th Cir. June 14, 2001) (per curiam).[9]

---

[9]Plaintiff argues that defendant had a duty under the ADA, apart from FMLA, to grant her a short leave to allow her foot to heal. However, plaintiff has never asserted that her foot injury, as opposed to her shoulder impairment, constitutes a disability under the ADA. Nor could she, as "temporary, non-chronic impairments of short duration with little to no long-term impact do not qualify as disabilities under the ADA." *Dogmanits v. Capital Blue Cross*, 413 F. Supp. 2d 452, 458 (E.D. Pa. 2005) (citing *Toyota Mfg., Inc. v. Williams*, 534 U.S. 184, 198 (2002) (to qualify as disability under ADA, impairment must be "permanent or long-term")). Because plaintiff's foot condition did not constitute a disability under the ADA, defendant had no duty to accommodate any impairment caused by the condition. *See Buckley v. Consolidated Edison Co. of N.Y., Inc.*, 155 F.3d 150, 153 (2d Cir. 1998) (the ADA "does not require an employer to make accommodation for an impairment that is not a disability within the meaning of the Act or that does not result from such disability.").

In any event, the Court need not rely on this alone because, regardless of whether plaintiff is properly viewed as an employee or an applicant as of October 20, 2003, her ADA claim fails.[10] Assuming that plaintiff was still an employee, there is no genuine issue of material fact that plaintiff could not perform the function of the restorative nurse position at defendant's nursing home, a fact conceded by plaintiff in her October 21, 2003, letter to defendant. This letter essentially requested transfer to a nursing position in defendant's assisted living facility as a reasonable accommodation. While transfer to another position may be a required reasonable accommodation in certain cases, it is not always so. To prevail on such a claim, plaintiff must point to a specific, identified position which was available at the time and which she was capable of performing with or without reasonable accommodation. *See Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004); *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1110 (10th Cir. 1999).

Here, however, plaintiff cannot point to any positions which were available at the time she was medically cleared to return to work in October 2003. In support of her argument, plaintiff attaches newspaper advertisements placed by defendant in August 2003. *See* Pl.'s Br., Ex. A.[11] There is no evidence, however, that the positions advertised there were still open as of October 2003, when plaintiff requested her accommodation. On the contrary, the only evidence in the record reflects that no nursing positions were filled in September or October 2003, and that the assisted living facility was overstaffed at that time. *See* Def.'s Reply Br., Ex. 5, ¶¶ 2-3. In August

---

[10]Defendant attacks the admissibility of much of the evidence relied upon by plaintiff. Because defendant is entitled to summary judgment in any event, the Court assumes that the plaintiff's evidence is admissible.

[11]Plaintiff also points to an advertisement that ran on September 24. However, this ad clearly sought candidates for a nursing position in the nursing home, not the assisted living facility. *See* Pl.'s Br., Ex. A.

12

2003 plaintiff was still on medical leave and therefore not qualified for the positions, and nothing in the ADA required defendant to hold open these positions for several months until plaintiff returned to work. *See Watkins v. J & S Oil Co.*, 164 F.3d 55, 62 (1st Cir. 1998); *Lara v. State Farm Fire & Casualty Co.*, No. 02-1308-WEB, 2003 WL 22149667, at *13 (D. Kan. July 24, 2003), *aff'd*, 121 Fed. Appx. 796, 803 (10th Cir. 2005). Likewise, upon plaintiff's return defendant was not required by the ADA to keep her on leave until a position she could perform became vacant, or to create a new position for her, or to displace other workers. *See Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004); *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 257 (6th Cir. 2000); *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir. 1996).

Plaintiff also asserts in her brief that her prior position, Health Service Coordinator, was filled in September 2003, shortly before defendant knew she would return to work. Even assuming that defendant would have had a duty under the ADA to keep this position open, plaintiff's argument fails as a factual matter. She proffers no evidence that this position was still vacant in September 2003, and defendant's evidence contradicts this assertion, indicating that the position was filled by Joyce Gluszewski on June 23, 2003, and that she remained in that position until May 2006. *See* Def.'s Reply Br., Ex 5, attachment.

Finally, plaintiff argues that defendant's employee handbook provided her with a right to continued employment in some position following her return from leave. Even were this the case, any such right would be contractual in nature, and not a right guaranteed by the ADA. However, plaintiff does not allege in the complaint that her termination constituted a breach of contract. A plaintiff may not "avoid summary judgment based on a claim that is not pled in her complaint." *Patrick v. Northwest Airlines, Inc.*, No. 00-554-JD, 2002 WL 467126, at *3 (D.N.H. Mar. 27, 2002); *see also*, *Perdue v. Union City, Ga.*, No. 1:05CV00753, 2006 WL 2523094, at *9 (N.D. Ga. Aug. 28,

2006).

In short, plaintiff has identified no available positions that she was capable of performing–with or without reasonable accommodation–at the time her medical leave ended in October 2003. Defendant had no duty to create such a position, nor did it have any duty to give plaintiff a position occupied by a current employee. Thus, plaintiff's ADA claim fails as a matter of law, and defendant is entitled to summary judgment.

II.     **ORDER**

In view of the foregoing, it is ORDERED that defendant's motion for summary judgment is hereby GRANTED. Because this Order and the Court's previous Order granting in part defendant's first motion for summary judgment dispose of all plaintiff's claims, the Clerk is directed to enter judgment against plaintiff and in favor of defendant.

IT IS SO ORDERED.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 9/28/07

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on September 28, 2007.
>
> s/Eddrey Butts
> Case Manager